**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 22 2001**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOHNNY RAY BASHAM, also known as
Johnny Bashum,

    Defendant-Appellant.

No. 01-5016

---

Appeal from United States District Court
for the Northern District of Oklahoma
(D.C. No. 00-CR-107-K)

---

R. Thomas Seymour, Tulsa, Oklahoma (Paul D. Brunton and Gina Cowley Crabtree,
Tulsa, Oklahoma, on the brief), for the appellant.

Timothy L. Faerber, Assistant United States Attorney (Thomas Scott Woodward, United
States Attorney, with him on the brief), Tulsa, Oklahoma, for the appellee.

---

Before **KELLY,** Circuit Judge, **BRORBY,** Senior Circuit Judge, and **BRISCOE**, Circuit
Judge.

---

**BRISCOE**, Circuit Judge.

---

    Defendant Johnny Ray Basham appeals the denial of his motion to suppress and

his subsequent convictions for possession with intent to distribute methamphetamine in

violation of 21 U.S.C. 841(a)(1) and 21 U.S.C. 841(b)(1)(C), possession of a firearm during a drug trafficking crime in violation of 18 U.S.C. 924(c), and possession of firearm after former conviction of a felony in violation of 18 U.S.C. 922(g)(1) and 18 U.S.C. 924(e)(1). He contends that the evidence discovered during the search of his residence should have been suppressed because the search warrant was invalid, in that the magistrate issuing the warrant failed to inquire as to the method by which it was to be executed, and the warrant itself was based on omission, misrepresentation and stale information. He further contends that the district court erred in its instruction to the jury with regard to the crime of possession of a firearm in furtherance of a drug trafficking crime. Our jurisdiction is pursuant to 28 U.S.C. § 1291. We affirm the district court's denial of the motion to suppress and affirm Basham's convictions.

I.

On April 20, 2000, Officer Brian Comfort of the Tulsa Police Department presented an affidavit for a search warrant of Basham's residence in which he detailed that he had witnessed a confidential informant purchase methamphetamine at Basham's residence within the past 72 hours, and that the confidential informant had informed him that the methamphetamine had been purchased directly from Basham and Basham had other methamphetamine packaged for sale.

In addition, Comfort referenced a prior search warrant affidavit submitted on August 20, 1999, which detailed the dangerous nature of Basham. A search warrant had

been issued based on the earlier affidavit, but had not been executed. Comfort stated that, in the earlier affidavit, information was related that Basham had been observed carrying a sawed-off shotgun at the front door of the residence, was very paranoid and violent toward visitors, was a frequent methamphetamine user, and had stated that he would not go back to prison at any cost.

Comfort further stated in his affidavit that Basham had a "lengthy criminal history," was an "[e]x-con," and "had numerous weapon and assault charges." Aplt. App. at 17. Based on the information regarding Basham, Comfort requested and was eventually issued a no-knock warrant in order to protect the safety of the officers executing the warrant. The warrant was executed by members of the Tulsa Police Department's Special Operations Team (SOT), and involved 31 to 33 officers and an armored personnel carrier. The SOT breached the front window of the residence, used a flash and sound diversionary device, and secured the residence without incident. The execution of the search warrant was taped by a local television station.

Eleven baggies of methamphetamine were discovered in the garage of the residence along with other items of paraphernalia. In a tool box next to where the drugs were found, police discovered an unloaded handgun. Two additional handguns, one of which was inoperable, were found on some shelving five to ten feet from the drugs. A shoulder holster was found in the metal filing cabinet containing the drug paraphernalia. The garage also contained surveillance monitors, a police scanner, and an electronic "bug

3

detector."

II.

Prior to trial, Basham filed a motion to suppress the evidence obtained during the search of his house. The district court denied the motion.

When reviewing a district court's denial of a motion to suppress, this court accepts the district court's factual findings unless they are clearly erroneous, viewing the evidence in the light most favorable to the government. However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law and is reviewed de novo under the totality of the circumstances. United States v. Green, 178 F.3d 1099, 1104 (10th Cir. 1999).

In determining whether a search warrant is supported by probable cause, this court reviews the sufficiency of the affidavit upon which a warrant is issued by looking at the totality of the circumstances and ensuring "that the magistrate had a substantial basis for concluding that probable cause existed." United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001). Probable cause to issue a search warrant exists only when the supporting affidavit sets forth facts that would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place. See United States v. Wicks, 995 F.2d 964, 972-73 (10th Cir. 1993). To justify a no-knock entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it

4

would inhibit the effective investigation of the crime. Richards v. Wisconsin, 520 U.S. 385, 394 (1997).

*Means of execution of warrant*

Basham first contends that the district court should have suppressed the evidence because the magistrate failed to inquire as to the means by which the warrant was to be executed. He argues that, in situations where a no-knock warrant is requested, the magistrate has an independent duty to inquire as to the means by which service is to be executed in order to protect public safety, including the safety of any minor children.

Basham presents no authority for this proposition. In Dalia v. United States, 441 U.S. 238, 256-59 (1979), the United States Supreme Court rejected the contention that an order allowing a wire intercept violated the Fourth Amendment because it did not specify the means by which the intercept would be installed. The Court stated that "it is generally left to the discretion of the executing officers to determine the details of how best to proceed with the performance of a search authorized by warrant, subject of course to the general Fourth Amendment protection 'against unreasonable searches and seizures.'" Id. at 257. The Court reasoned that it is often impossible to anticipate what actions will be necessary in serving a warrant, and further noted that "[n]othing in the decisions of this Court . . . indicates that officers requesting a warrant would be constitutionally required to set forth the anticipated means for execution even in those cases where they know

5

beforehand that unannounced or forced entry likely will be necessary." Id., n. 19.

To be sure, the officers' discretion regarding the method of execution is not without limitation, but instead must be exercised within statutory and constitutional limitations. United States v. Stewart, 867 F.2d 581, 583 (10th Cir. 1989). In United States v. Ramirez, 523 U.S. 65, 71 (1998), the Court stated that the "general touchstone of reasonableness which governs Fourth Amendment analysis" also governs the execution of a search warrant, and that excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment. However, this is an entirely different matter than the question of whether the warrant itself is valid. In Ramirez, the Court held that such excessive or unnecessary destruction does not impact the lawfulness of the entry because it has no relation to whether the "reasonable suspicion" necessary to justify a no-knock warrant exists. See 523 U.S. at 70-71.

We conclude, consistent with Dalia and Ramirez, that there is no duty on the part of the magistrate to inquire as to the method by which a warrant will be executed, and that the failure of a magistrate to so inquire provides no basis for suppression of the evidence obtained during the search.

*Warrant product of misrepresentation and stale information*

Basham next argues that the warrant was invalid because it was the product of

6

misrepresentation and stale information. He argues that Officer Comfort intentionally withheld relevant information in his affidavit and misrepresented Basham's criminal record.

It is a violation of the Fourth Amendment for an affiant to knowingly and intentionally, or with reckless disregard for the truth, make a false statement in an affidavit. Franks v. Delaware, 438 U.S. 154, 171-72 (1978.) Where a false statement is made in an affidavit for a search warrant, the search warrant must be voided if the affidavit's remaining content is insufficient to establish probable cause. Id. at 171-72. This prohibition likewise applies to intentional or reckless omissions of material facts, which, if included, would vitiate probable cause. Stewart v. Donges, 915 F.2d 572, 581-83 (10th Cir. 1990). In a case where the defendant alleges information was intentionally omitted from an affidavit, the existence of probable cause is determined by examining the affidavit as if the omitted information had been included and determining whether the affidavit would still give rise to probable cause. Wolford v. Lasater, 78 F.3d 484, 489 (10th Cir. 1996).

Basham contends that Officer Comfort intentionally withheld information that the media would be present during the execution of the warrant and that the SOT was planning a high-risk execution of the warrant at a time when there would be minor children in the home. However, as stated above, the method employed to execute a search warrant is not relevant to the questions of whether there was probable cause to

7

issue the warrant or whether there was a showing of reasonable suspicion sufficient to justify a no-knock warrant. See Ramirez, 523 U.S. at 71. Had information pertaining to the presence of children and a television crew been included in the warrant, probable cause would still exist, and there still would have been a reasonable suspicion that knocking and announcing would have been dangerous, futile, or destructive to the purposes of the investigation.

With regard to allegedly misleading information in the affidavit, Basham contends that Officer Comfort misled the magistrate into authorizing a no-knock warrant by falsely representing that Basham's criminal history included "numerous weapons and assault charges." At the suppression hearing, evidence was presented that Basham had been arrested twice on weapons charges and once on assault charges. The district court held that "the defendant's criminal history appears to have been somewhat exaggerated in the affidavits (of which this Court does not approve)." Aplt. App. at 239. Nevertheless, the district court went on to find that a criminal history involving drugs and weapons did exist and justified the issuance of the no-knock warrant.

Even considering Basham's actual criminal history, the affidavit contains information that Basham had been charged with assault and two weapons violations, was paranoid and had violent tendencies, had stated to an informant that he would not go back to jail at any cost, and previously had approached the door of his residence with a sawed-off shotgun. These facts alone would have been sufficient to support a reasonable

8

suspicion that knocking and announcing would be dangerous or futile, or would inhibit the effective investigation of the crime. See Richards, 520 U.S. at 394. Therefore, the exaggeration did not affect the issuance of the warrant and the district court did not err in failing to declare the warrant invalid on that basis.

Basham also contends the affidavit was based on stale information because much of the evidence regarding his dangerous tendencies came from an earlier affidavit. He argues there was no new information regarding his violent tendencies, and therefore, no reason to suspect that a no-knock warrant was needed.

The trial court held that the information in the affidavit was not stale, in that the information from the previous affidavit had been corroborated by the second drug buy, and nothing had changed regarding Basham's criminal history. Basham argues that for the court to simply assume that the situation would be dangerous enough to justify a no-knock warrant was "dangerously close" to establishing a criminal category exception, which was prohibited by the United States Supreme Court in Richards.

Basham's argument is without merit. In Richards, the Court struck down a Wisconsin Supreme Court decision holding that police officers are never required to knock and announce their presence when executing a search warrant in a felony drug investigation. The Court concluded that such an exception to the knock and announce rule contained an overgeneralization, and that while some drug investigations pose a substantial risk of danger, not every investigation does. 520 U.S. at 393. In such

situations, the governmental interests in preserving evidence and maintaining safety might not outweigh the individual privacy interests intruded upon by a no-knock entry, and a blanket rule would insulate those cases from review. Id. The Court further held that the reasons for creating one category exception to the knock and announce rule could easily be applied to others, rendering the Fourth Amendment's reasonableness requirement meaningless. Id. at 393-94.

The blanket category concern is not present, however, where the no-knock determination is based upon an individual defendant's conduct. It would be an overgeneralization to conclude that because a person is engaged in the drug trade, that person is likely to be dangerous and possess firearms. However, it would not be an overgeneralization to conclude that because a certain person involved in the drug trade exhibited violent tendencies, was armed with a sawed-off shotgun, declared that he would not go to prison at any cost, and had a violent criminal history eight months previous, the same person might possess weapons and hold the same views at the present time, given that he was still involved in the drug trade. See United States v. Singer, 943 F.2d 758, 763 (10th Cir. 1991) (noting that guns, unlike drugs, are durable goods useful to their owners for long periods of time, and finding that information that a suspect possessed a gun six months prior was not too stale to support a no-knock warrant under the circumstances).

The determination of whether information is stale depends on the nature of the

10

crime and the length of criminal activity, not simply the number of days that have elapsed between the facts relied upon and the issuance of the warrant. United States v. Myers, 106 F.3d 936, 939 (10th Cir. 1997). The information regarding Basham's state of mind concerning returning to jail, his violent and paranoid tendencies, and his possession of a firearm all related to his involvement in the drug trade. This information was not stale as it was not likely to have changed over the eight-month period of time since Basham was still involved in the drug trade. Certainly, Basham's criminal history of violence was not affected by the passage of time. The district court did not err in failing to suppress the evidence based upon the presence of stale information in the affidavit.

Because we conclude that the search warrant issued in this case was valid, we need not determine whether the good faith exception found in United States v. Leon, 468 U.S. 897 (1984), is applicable.

## III.

Basham also contends that the district court erred in its instruction to the jury regarding the offense of possession of a firearm in furtherance of a drug trafficking crime. He contends that the court's instruction erroneously broadened the language of the offense, and thus constituted reversible error.

This court reviews jury instructions de novo to determine whether, as a whole, the instructions correctly state the governing law and provide the jury with an ample understanding of the issues and applicable standards. United States v. Wittgenstein, 163

F.3d 1164, 1168 (10th Cir. 1998).

Basham was charged with a violation of 18 U.S.C. § 924(c)(1)(A)(i), which prohibits the using or carrying of a firearm during and in relation to any crime of violence or drug trafficking crime, or the possession of a firearm "in furtherance" of any such crime. The jury was instructed that to find Basham guilty, it must find in part that he "knowingly possessed a firearm in furtherance of the commission of [the drug trafficking crime of possession with intent to distribute methamphetamine]." Appee App. at 198. The instruction to which Basham objects defines the element "possessed in furtherance," and more particularly the phrase "in furtherance of" as follows:

> "In furtherance of" means for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense.
> Mere presence of a firearm at the scene is not enough to find possession in furtherance of a drug trafficking crime, because the firearm's presence may be coincidental or entirely unrelated to the underlying crime. Some factors that may help in determining whether possession of a firearm furthers, advances, or helps forward a drug trafficking offense might include, but are not limited to:
> 1. the type of drug activity that is being conducted;
> 2. accessibility of the firearm;
> 3. the type of weapon;
> 4. whether the weapon is stolen;
> 5. the status of the possession (legitimate or illegal);
> 6. whether the gun is loaded;
> 7. proximity to drugs or drug profits; and
> 8. the time and circumstances under which the gun is found.

Id. at 280-81.

The eight factors listed above were taken from the decision in United States v.

12

Ceballos-Torres, 218 F.3d 409 (5th Cir. 2000). In that case, Ceballos-Torres was convicted of possessing a firearm in furtherance of a drug trafficking crime where a loaded gun was discovered on top of his bed and drugs were found in a closet. The court discussed the meaning of the term "in furtherance" and settled on the dictionary definition of "'the act of furthering, advancing, or helping forward.'" Id. at 412. The court emphasized that the mere presence of a firearm is not enough, but stated that what is required is "evidence more specific to the particular defendant, showing that his or her possession actually furthered the drug trafficking offense." Id. at 414. The court then provided the nonexclusive list of factors, listed in the instruction above, which it deemed helpful in making the determination. Ultimately, the court affirmed Ceballos-Torres's conviction, based on the fact that the weapon was loaded and easily accessible in the apartment, and was possessed in the apartment along with drugs.

Basham argues that the factors taken from Ceballos-Torres are an incorrect statement of the law. He argues that the language allowing the jury to find that he possessed the guns and drugs based simply on the proximity of the gun to the drugs is incorrect under the United States Supreme Court's decision in Bailey v. United States, 516 U.S. 137 (1995). In Bailey, the Court strictly defined the term "use" in § 924 to denote the active employment in connection with the crime. The Court stated that simply having a gun nearby for use if needed during drug crimes would not satisfy the "use" provision of the statute. Id. at 149-50. According to Basham, the addition of the

13

"possession in furtherance of" prong to the statute was merely surplusage and did not affect this holding in Bailey. He contends that to instruct the jury that it could consider the proximity of the weapons found to drugs or drug profits was error, and that the jury should have been instructed that the "mere inert presence or storing of a firearm near drugs or drug proceeds is inadequate to support a conviction." Aplt. Br. at 38. Basham offered a jury instruction which included this language.

There is some tension between the opinion in Ceballos-Torres and this court's holding in United States v. Iiland, 254 F.3d 1264 (10th Cir. 2001), regarding the scope of the amendment to § 924 which added the language regarding possession in furtherance of drug trafficking. In Ceballos-Torres, the Fifth Circuit concluded that the addition of this language was intended to broaden the reach of the statute in the wake of the Supreme Court's narrow construction of the "use" and "carry" language in Bailey. See 218 F.3d at 413. However, in Iiland, this court concluded that rather than broadening the statute, the amendment directed the "in furtherance" requirement to be an even higher standard than that required for the "use" and "carry" prongs, and to require a direct connection between the firearm and the drug offense. 254 F.3d at 1271-74.

Despite this apparent difference regarding the scope of the amendment, nothing in Iiland compels rejection of the Ceballos-Torres factors as relevant and helpful to the jury in determining when possession of a firearm is "in furtherance of" drug trafficking. The court in Iiland specifically noted, in finding that the government had failed to show

14

possession in furtherance of drug trafficking, that "[t]here was no evidence that the gun and drugs were ever kept in the same place or that Mr. Iiland ever kept the gun accessible when conducting drug transactions." 254 F.3d at 1274. Basham's argument that the proximity of the firearm to drugs or drug proceeds cannot be used as a factor in determining whether possession is in furtherance of drug trafficking ignores the distinction between the terms "used" and "possessed." Under <u>Bailey</u>, a firearm that is kept available for use if needed is not actually "used," in the sense that if the firearm is merely available for use, it is not "actively employed." <u>See</u> <u>Bailey</u>, 516 U.S. at 149-150. However, a firearm that is kept available for use if needed during a drug transaction is "possessed in furtherance of" drug trafficking, because such possession does not necessarily require "use" as long as such possession "in furtherance of" is the intent of the drug trafficker. Such intent would necessarily be subject to proof by circumstantial evidence, and factors such as the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found would be relevant and helpful to a jury in determining the intent with which the weapon was possessed. The mere possession of a firearm in proximity to drugs or drug proceeds would not require a finding that a weapon was possessed in furtherance of drug trafficking, but could be considered by the jury along with other evidence in arriving at a decision as to intent.

15

The instruction here advised the jury that in order to convict it must find that Basham possessed the firearm involved for the purpose of assisting in, promoting, accomplishing, advancing, or achieving the goal or objective of the underlying offense. The factors from Ceballos-Torres were included as helpful factors that the jury could use in reaching its decision. The jury was explicitly instructed that the mere presence of a firearm at the scene was not enough to find possession. The instruction given fairly and accurately stated the law.

AFFIRMED.