**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 5 2003**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

NINA D. WATSON,

Defendant - Appellant.

No. 01-4258
D.C. No. 2:01-CR-206-B
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ANDERSON**, and **O'BRIEN**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f). The case is therefore ordered submitted without oral argument.

**INTRODUCTION**

Nina D. Watson pled guilty to a violation of 21 U.S.C. § 841(a)(1),

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

possession with intent to distribute fifty grams or more of methamphetamine, and was sentenced to the mandatory minimum term of ten years imprisonment. She reserved the right, exercised here, to appeal the district court's denial of her motion to suppress evidence obtained through a state daytime no-knock search warrant. She also appeals the district court's refusal to ignore mandatory minimum sentencing requirements. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm.


**ISSUES PRESENTED**

Ms. Watson presents the following issues for review:

1.     The fruits of the search conducted pursuant to the search warrant should be suppressed because:

    i.     The applicant for the warrant made sworn statements that were perjurious or made with reckless disregard for the truth, in violation of *Franks v. Delaware,* 438 U.S. 154 (1978).

    ii.     Probable cause to search was not shown because the supporting affidavit did not adequately establish the reliability of the informants, and its recital of Ms. Watson's criminal history was improper.

    iii.     The facts stated in the affidavit were insufficient to support the

no-knock authorization.

    iv.    The facially deficient search warrant did not survive the good faith exception enunciated in *United States v. Leon,* 468 U.S. 897 (1984).

    v.    The search warrant was not delivered to Ms. Watson before the search was conducted.

2.    The district court erred in refusing to grant safety valve relief under 18 U.S.C. § 3553(f) and UNITED STATES SENTENCING COMMISSION, GUIDELINES MANUAL § 5C1.2 (Nov. 2001)(USSG) from a mandatory minimum term of ten years imprisonment.

**FACTS**

On January 3, 2001, Detective Marcelo Rapela of the Sandy, Utah Police Department filed an affidavit for a search warrant with a judge of the Third District Court of Utah, seeking to search Ms. Watson's residence for evidence of the production and sale of methamphetamine. The affidavit presented the following information. Ms. Watson lived in a residence adjacent to and rented from Mr. Kolten Kener. Several months preceding Detective Rapela's affidavit, two confidential informants identified Mr. Kener as selling methamphetamine from his home. Within the week prior to filing the affidavit, an anonymous

-3-

neighbor informed the detective about a large amount of "short stay" traffic to and from the Watson and Kener residences. The detective knew Ms. Watson was a suspect in a previous investigation for the sale of methamphetamine and that she had previous arrests and convictions for distribution of controlled substances. On the day he applied for the search warrant, Detective Rapela personally watched the adjoining residences of Mr. Kener and Ms. Watson, where he observed some "short stay" traffic. He also observed Mr. Kener walk from his residence to Ms. Watson's residence, go inside for about ten minutes, then return to his residence. After five minutes or so, he observed another male ("confidential informant") emerge from the Kener residence, get into a truck parked in Mr. Kener's driveway, and depart. Detective Rapela immediately executed a traffic stop on the confidential informant, who was found to possess several baggies of methamphetamine. The informant told Detective Rapela the following: Mr. Kener delivered the methamphetamine to him for the purpose of sale to others; Ms. Watson was Mr. Kener's methamphetamine supplier; he watched Mr. Kener go over to Ms. Watson's house (the same movement independently observed by the detective) to obtain the methamphetamine from her; he had personally observed Mr. Kener deliver pre-cursor chemicals to Ms. Watson within the previous twenty-four hours; and someone named "Rick" had told him Ms. Watson maintained a clandestine methamphetamine laboratory in her residence.

Detective Rapela stated the information provided by the confidential informant and the anonymous neighbor was reliable because neither was given compensation or other consideration in exchange for his statement, and the information was verified by Detective Rapela's independent surveillance and previous investigation. According to the detective, no threats or promises were made to the confidential informant; and the anonymous neighbor had nothing to gain by providing his information other than the well-being of the neighborhood.

In support of a request for no-knock authorization in execution of the search warrant, Detective Rapela asserted Mr. Kener kept a loaded handgun in the front room of his residence in fear of robbery or assault; Ms. Watson had a sophisticated surveillance system in place at her residence which would allow approaching officers to be seen; and advance notice would both compromise the safety of the entry team and enable Ms. Watson to destroy evidence or obtain a weapon. Based upon the affidavit of Detective Rapela, a judge issued a daytime no-knock search warrant for Ms. Watson's premises.[1] In the search, conducted the same day as the application for the warrant, law enforcement officers seized

---

[1]Based on the affidavit provided by Detective Rapela, the same judge also issued a daytime "no-knock" search warrant for Mr. Kener's residence. Law enforcement had targeted both residences as part of a suspected drug distribution scheme.

narcotics, cash and other evidence of narcotics production and distribution.

The Presentence Investigation Report evidenced a criminal history point ranking of three for Ms. Watson, based upon a prior felony conviction (one point) and commission of the instant offense while on probation (two points).

**STANDARD OF REVIEW**

We review de novo a district court's determination of reasonableness under the Fourth Amendment, but defer to its factual findings if they are not clearly erroneous,  viewing the evidence in the light most favorable to the government. *United States v. Basham,* 268 F.3d 1199, 1203 (10th Cir. 2001), *cert. denied*, 122 S.Ct. 1336 (2002).  We accord great deference to the magistrate who issued the search warrant in his finding of probable cause.  *Illinois v. Gates*, 462 U.S. 213, 236 (1983).  If there was a substantial basis for issuance of the warrant, it will stand.  *Basham*, 268 F.3d at 1203.  We review the district court's interpretation of the Sentencing Guidelines de novo.  *United States v. Owensby,* 188 F.3d 1244, 1245 (10th Cir. 1999).

**DISCUSSION**

### 1. Search Warrant

### a. Denial of *Franks* Hearing

*Franks* requires a defendant who challenges the veracity of an affidavit for a search warrant to make a "substantial preliminary showing" the affiant made a "false statement knowingly and intentionally, or with reckless disregard for the truth" to the reviewing magistrate. *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978). Intentional or reckless omissions of material fact are treated in like fashion. *Stewart v. Donges,* 915 F.2d 572, 582-83 (10th Cir. 1990).

The challenged statement from Detective Rapela's affidavit was: "On 01-03-2001 your affiant performed surveillance at the two above mentioned address's [sic]. Your affiant observed some 'short stay' traffic." Ms. Watson's attorney submitted an affidavit to the district court in support of the *Franks* hearing request. In it, she recited a conversation she had with Detective Rapela in which he further detailed his surveillance of the two residences, stating he saw three vehicles come and go from the Kener residence and one vehicle come and go from the Watson residence. Distinguishing this revelation from the statement in his search warrant affidavit, Ms. Watson claims Detective Rapela uttered a deliberate falsehood to the reviewing magistrate.

Taking the affidavit of Ms. Watson's attorney as a whole, it does not reach the threshold required for a *Franks* hearing. There is no apparent falsehood, let alone one that is deliberate or reckless. Detective Rapela's statement that he observed short-stay traffic at the two residences was imprecise, but it was not false, even charitably considering the additional detail supplied in the affidavit of Ms. Watson's attorney. The thrust of the search warrant application was the coincidence of the houses in a criminal enterprise to distribute methamphetamine. Ms. Watson has not made clear how the specific details detract from that theme. Accordingly, she has failed to make a "substantial preliminary showing" of a false statement. As a result, we need not consider whether the statement was made knowingly and intentionally or in reckless disregard of the truth. If anything, the detective's imprecision goes to the sufficiency of the affidavit, which we will next discuss.

### b. Sufficiency of the Search Warrant

"[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates,* 462 U.S. 213, 232 (1983). Probable cause does not denote a prima facie case of criminal activity, but only the probability of it. *Id.* at 235 (citing *Spinelli v. United States,* 393 U.S. 410,

419 (1969)). The *Gates* court adopted a "totality of the circumstances" test in evaluating an informer's tip, where such factors as the veracity of the informant and his basis of knowledge were not independently scrutinized, but reviewed in a mix. *Id.* at 238-39.

With these principles in mind, we turn to Ms. Watson's arguments. The anonymous neighbor tip as to recent short-stay traffic was insufficient, standing alone, to support a search warrant.[2] As *Gates* teaches, though, such a tip is a legitimate and meaningful part of the totality of the circumstances upon which a reviewing magistrate may rely. Ms. Watson cites *United States v. Danhauer,* 229 F.3d 1002 (10th Cir. 2000), to support her argument there was no evidence of the veracity or basis of knowledge of the confidential informant. The citation is inapposite. In *Danhauer*, there was no incriminating corroboration developed to substantiate the claims of the confidential informant, only assertions of innocent facts. 229 F.3d at 1006. This case stands in stark contrast. The confidential informant here was stopped leaving the Kener residence in flagrante delicto, aweight with baggies of methamphetamine. Shortly before the confidential

---

[2]A citizen informant's tip is presumptively reliable. *United States v. Neff,* 300 F.3d 1217, 1221 (10th Cir. 2002) (dictum). Here, of course, we are presented with an anonymous citizen tip. While we believe the anonymity of the tip tends to diminish its presumptive reliability, we note Detective Rapela independently verified the tip through his own observation.

informant's arrest, Detective Rapela had observed Mr. Kener walk to the Watson residence, stay there about ten minutes, then return to his residence. These independent observations bolstered the report of the confidential informant indicating Mr. Kener was his supplier, and Ms. Watson was Mr. Kener's supplier. They also tended to verify the confidential informant's claim to have personally observed Mr. Kener provide Ms. Watson with precursor chemicals within the past twenty-four hours.

For all of this information the confidential informant was offered no consideration, adding to his credibility. His credibility was also bolstered because he made statements against his penal interest when he admitted to participation in a criminal enterprise. *United States v. Sporleder,* 635 F.2d 809, 812 (10th Cir. 1980). Finally, the temporal and spatial proximity of the confidential informant's possession of narcotics to the Watson and Kener residences, in addition to all of the other circumstances of the case, are significant in substantiating his assertions.

Ms. Watson also challenges the recital of her criminal history in the warrant application, including arrests and convictions for distribution of controlled substances. That bit of information along with other marginal recitals

does not warrant discussion because, apart from them, there was a substantial basis for the decision of the issuing magistrate.

### c.  No-Knock Entry

The requirement for law enforcement officers to "knock and announce" when executing a warrant "forms a part of the reasonableness inquiry under the Fourth Amendment[,]" except in cases of exigent circumstances, as where there is a threat of physical violence or where evidence would be at risk of destruction in the event of an advertised entry.  *Wilson v. Arkansas,* 514 U.S. 927, 929, 936 (1995), *cert. granted*, 513 US 1014 (1994).  The showing required for no-knock authorization is "not high."  *Richards v. Wisconsin,* 520 U.S. 385, 394 (1997).  It depends upon a reasonable suspicion by law enforcement officers that to announce their presence in advance of entry would place them at risk or allow destruction of evidence.  *Id*.; *Basham,* 268 F.3d at 1203.  The affiant's articulated belief of "exigent circumstances" must be "objectively reasonable."  *United States v. Stewart,* 867 F.2d 581, 584 (10th Cir. 1989).  Here, the government offered two exigencies: the presence of a firearm in Mr. Kener's household and a surveillance system in place at Ms. Watson's household.

The mere presence of firearms within a premises to be searched does not

constitute exigent circumstance sufficient to obviate the requirement to knock and announce. However, if the government demonstrates the presence of firearms presents a threat to safety, then exigent circumstance is indeed shown. *See United States v. Moore,* 91 F.3d 96, 98 (10th Cir. 1996); *United States v. Gay,* 240 F.3d 1222, 1228 (10th Cir. 2001), *cert. denied*, 533 U.S. 939 (2001). The review in this case is complicated by the fact the firearm in question was alleged to be present in Mr. Kener's household, not Ms. Watson's. In challenging the sufficiency of the affidavit, Ms. Watson's only complaint about the grant of no-knock authority as it related to the firearm is that any danger presented by a firearm in Mr. Kener's residence should not have been imputed to her for the purpose of supporting no-knock entry into her residence. However, the allegations taken as a whole clearly suggest concerted activity by these two individuals in methamphetamine production and in running a wholesale drug operation from their separate residences as a combined unit. Therefore, it is a fair inference that if alerted to the presence of police, Mr. Kener might use his firearm to protect himself, his confederate, Ms. Watson, and their joint enterprise against discovery.

Detective Rapela reported a sophisticated surveillance system in place at Ms. Watson's residence, suggesting an opportunity for her to conceal or destroy

evidence and to alert Mr. Kener. To be sure, as Ms. Watson argues, there is nothing in the request for no-knock authority providing any more than a bare description of the surveillance system. But Detective Rapela was understandably limited in the detail he could certify to the reviewing magistrate because his observations were perforce surreptitious. An articulated concern that the target of a search might be alerted in advance to the presence of officers so as to threaten destruction of evidence is an exigent circumstance justifying no-knock procedure. *United States v. Dickerson,* 195 F.3d 1183, 1186-87 (10th Cir. 1999).

Taking into account the circumstances as a whole, we find the issuance of no-knock authority was justified by a reasonably articulated threat to officer safety and the need to preserve evidence from destruction, either of which would have sufficed. In arriving at this conclusion, we bear in mind this was a daytime search,[3] which does not demand the extra degree of scrutiny for reasonableness

---

[3]The search of Ms. Watson's residence began at 7:00 p.m. Utah defines "nighttime" as one half hour after sunset to one half hour before sunrise. *State v. Simmons,* 866 P.2d 614, 617 (Utah 1993). However, even if the search was conducted during the "nighttime" under Utah law, federal constitutional requirements govern admissibility in federal court of evidence seized under a search warrant entirely state in character. *United States v. Gibbons,* 607 F.2d 1320, 1325 (10th Cir. 1979). FED. R. CRIM. P. 41, "is a useful guide because it implements the essentials of the Fourth Amendment." *Id.* at 1326. The rule in effect at the time of the search of Ms. Watson's residence defined "nighttime" as the hours between 10:00 p.m. and 6:00 a.m. FED. R. CRIM. P. 41(h) (the rule was restyled in 2002, but contains the same definition).

required of a nighttime search. *See United States v. Callwood,* 66 F.3d 1110, 1113 (10th Cir. 1995). We also note extra protection of Fourth Amendment freedoms was provided because a disinterested magistrate authorized the no-knock search.

### d. The *Leon* Exception

Ms. Watson argues the good faith exception announced by *United States v. Leon,* 468 U.S. 897 (1984), cannot save the fruits of the search conducted here. However, since the search warrant was properly issued, the issue is moot.

### e. Failure to Provide Copy of Search Warrant

Ms. Watson argues the evidence seized under the search warrant should be suppressed because the officers executing the warrant failed to provide her a copy of it prior to conducting the search. However, she refers to no evidence adduced or argument presented in the district court to support the contention, and there is no ruling from which to appeal. We deem the issue waived below and decline to address it. *United States v. DeWitt,* 946 F.2d 1497, 1502 (10th Cir. 1991), *cert. denied*, 502 U.S. 1118 (1992).

## 2.    Failure to Grant Downward Departure

Ms. Watson complains she did not receive safety valve relief under 18 U.S.C. § 3553(f). This provision directs the district court to sentence beneath the ten year minimum term of imprisonment mandated by 21 U.S.C. § 841(b)(1)(A), pursuant to the Sentencing Guidelines, so long as certain predicates are met. The only predicate at issue here is: "the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(1). *See also,* USSG § 5C1.2(a)(1). Employment of the safety valve provision, as its language suggests, presupposes a sentence under the Sentencing Guidelines lower than the mandatory minimum term of imprisonment. In Ms. Watson's case, it presupposes favorable consideration for downward departure from "heartland" cases on the grounds allowed by statute and the Sentencing Guidelines. *See* 18 U.S.C. § 3553(b); USSG, ch. 1, pt. A, 4(b); and USSG § 5K2.0.

Ms. Watson has advanced several grounds for downward departure from "heartland" cases pursuant to 18 U.S.C. § 3553(b) and USSG § 5K2.0. We need not evaluate these claims because, even if they are meritorious, 18 U.S.C. § 3553(f) still forbids a breach of the mandatory minimum term of imprisonment since Ms. Watson has more than one criminal history point.

Ms. Watson concedes as valid the three point criminal history attributed to her in the Presentence Investigation Report (one point for a prior felony conviction of possession of a controlled substance and two points for commission of the instant offense while on probation for the prior offense). She argues that it ought to be reduced to one point, thereby enabling a breach of the mandatory minimum term of imprisonment, for two reasons. First, she asserts her probation status when she committed the instant offense was due to her being a methamphetamine addict and if she was not an addict she would not have been on probation. Secondly, she argues disparate treatment accorded her confederates in the methamphetamine distribution scheme justifies a reduction in her criminal history points. The arguments fail.

Ms. Watson confuses "departure from heartland" analysis with the requirements of 18 U.S.C. § 3553(f). We have previously held a downward departure in the sentencing guideline range, occasioned by a determination that a defendant's criminal history category overstates the seriousness of past criminal conduct, does not permit a revision in the calculation of criminal history points itself. *United States v. Owensby,* 188 F.3d 1244, 1246 (10th Cir. 1999). The calculation of criminal history points is an objective exercise based on stated criteria in the Sentencing Guidelines. It is not subject to alteration through the

exercise of judicial discretion. *Id.* at 1247. So too with respect to any other cause for downward departure authorized by statute and the Sentencing Guidelines. "[T]he district court has no discretion to depart from a statutory minimum sentence for section 3553(b) mitigating circumstances." *United States v. Verners,* 103 F.3d 108, 111 (10th Cir. 1996). Put simply, § 3553(f) trumps § 3553(b). The district court was correct. It possessed no authority to consider a departure from the statutory minimum term of imprisonment because Ms. Watson did not meet the requirements of 18 U.S.C. § 3553(f).

**CONCLUSION**

The district court's denial of Ms. Watson's motion to suppress evidence and its refusal to afford sentencing relief under 18 U.S.C. § 3553(f) were both proper. The judgment and sentence are AFFIRMED.

**Entered by the Court:**

**TERRENCE L. O'BRIEN**
United States Circuit Judge