**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 22, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ABRAHAM AMAYA,

Defendant - Appellant.

No. 05-2389

(D. New Mexico)

(D.C. No. CR-04-1312-RB)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **ANDERSON**, and **McCONNELL**, Circuit Judges.

Following a jury trial, Abraham Amaya was found guilty of possession with intent to distribute 500 grams or more of a substance containing methamphetamine and conspiracy, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846. He was sentenced to 120 months imprisonment, followed by five years of supervised release. He appeals his conviction, which we affirm.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

Amaya's arrest and conviction occurred as a result of a multi-year investigation into a methamphetamine trafficking organization run by Guadalupe Lopez. In December 2003, federal agents working with a confidential informant purchased four pounds of methamphetamine from Lopez. Based upon this seizure and other information gleaned from their investigation, the agents obtained a wiretap on a cellular telephone used by Lopez. Federal authorities began intercepting calls in March 2004.

On April 5, 2004, federal agents learned from intercepted calls that Lopez was planning to deliver four pounds of methamphetamine to Amaya's co-defendant, Alberto Becerra, the next day. The agents began conducting surveillance of Becerra. They believed that Lopez would deliver the methamphetamine using the same black Dodge pickup with Texas license plates that he had used in the December 2003 sale. Through intercepted calls and surveillance, the agents found the truck at a Budget Inn in Roswell, New Mexico, on April 6, 2004. At approximately 11:45 a.m., Becerra arrived at the Budget Inn and met with the driver of the truck, later identified as Amaya.

Shortly thereafter, Amaya, driving the truck, and Becerra, driving a car, left the Budget Inn and drove to 7018 LaVanne in Hagerman, New Mexico. No one was home at the residence. Amaya and Becerra got out of their vehicles and looked underneath the back of the truck.

Approximately an hour later, Amaya drove the truck to Becerra's house at 400 Kansas in Hagerman, New Mexico, while Becerra followed in a car. They remained at Becerra's house for several hours. At approximately 6 p.m., Amaya drove the truck back to 7018 LaVanne and parked in the carport, with Becerra again following in a car. After Becerra and Amaya arrived at the residence, the agents observed Becerra and another individual conducting "heat runs" to check for the presence of law enforcement personnel in the area. When the agents observed several vehicles leaving the residence shortly thereafter, fearing that the methamphetamine they suspected was in the truck had been unloaded and was being transported away, they stopped the vehicles and secured the residence.

At this point, Drug Enforcement Administration ("DEA") Special Agent Mike Murphy obtained a federal search warrant for the residence and any vehicles at 7018 LaVanne. The affidavit prepared by Agent Murphy in support of the warrant contained the following information about the drug trafficking organization: a confidential source had informed Murphy that Becerra was "purchasing and distributing large quantities of methamphetamine in the Roswell, New Mexico area"; Becerra's source was in the El Paso, Texas area; on April 6, 2004, a second confidential source[1] told Murphy that Becerra "would be receiving a large quantity of methamphetamine from an unknown individual in Roswell,

_____

[1]This second confidential source was the wiretap on the cellular phone used by Lopez.

NM on April 6, 2004"; on April 6, "law enforcement agents observed B[ecerra] meet with an unknown individual at a hotel in Roswell"; agents then observed Becerra drive his vehicle while "the unknown man followed in a separate/second vehicle with Texas license plates"; "[t]he two vehicles then traveled in tandem to [a] second location . . . [where] an individual peered under the second vehicle with the Texas license"; thereafter, "both vehicles departed driving in tandem to 400 Kansas, Hagerman, NM"; after several hours, the "vehicle with the Texas license departed the area" and was driven to 7018 LaVanne in Hagerman, where it was parked in the carport; after other vehicles arrived and departed the residence, agents stopped the cars and secured the residence. Application and Aff. for Search Warrant, Attach. C, R. Vol. I, tab 39.

With respect to the two confidential sources ("CS"s), the affidavit stated that "[b]oth CS1 and CS2 have provided reliable information in the past that has been corroborated through other means." Id. A United States Magistrate Judge signed the warrant, and the agents' subsequent search of the residence and the Dodge pickup truck driven by Amaya uncovered 507.6 grams of methamphetamine in a hidden compartment in the truck's axle. Amaya was arrested.

On April 8, 2004, Amaya, along with his co-defendants Becerra and Francicso Huerta-Varela, the owner of the residence at 7018 LaVanne, and two other individuals, was indicted for conspiracy and possession with intent to

-4-

distribute methamphetamine. On May 6, the district court set a trial date of June 14, 2004. On May 28, the government filed a motion to dismiss the indictment without prejudice, for the stated reason that "the testimony of a confidential source will be needed at trial and, for investigative reasons, the United States is not able to disclose the identity of the confidential source at this time." Mot. to Dismiss Indictment Without Prejudice, R. Vol. I, tab 38.[2] Finding that the motion "states good cause," on June 1, the district court dismissed the indictment without prejudice. Amaya and his co-defendants were then released from custody.

On July 9, 2004, a second indictment was lodged against Amaya and his co-defendants, again charging Amaya with conspiracy and possession with intent to distribute 500 grams or more of methamphetamine.[3] Amaya and his co-defendants were arrested again. On December 7, 2004, Huerta-Varela filed a motion to suppress evidence seized during the search of his house. Two days later, Amaya filed a motion to dismiss the indictment and to suppress all evidence seized during the search of Huerta-Varela's house, including the methamphetamine found in the truck Amaya had driven to the residence. After holding a hearing, the district court denied the motion to dismiss, denied the

---

[2]This confidential source was the wiretap, the revelation of which at that time would have brought the entire investigation of the Lopez drug trafficking organization to a halt.

[3]A third count charged Becerra only with carrying a firearm during and in relation to a drug trafficking crime.

motion to suppress with respect to the truck, but granted the motion to suppress with respect to any evidence found inside Huerta-Varela's house.

Amaya, Becerra and Huerta-Varela proceeded to trial, following which the jury found Amaya and Becerra guilty, but acquitted Huerta-Varela. The court then sentenced Amaya to 120 months' imprisonment. This appeal followed.

Amaya argues on appeal that (1) the district court erred in failing to dismiss the second indictment because the court had granted the government's motion to dismiss the first indictment containing the same charges; and (2) the district court erred in failing to grant Amaya's motion to suppress the methamphetamine found in the truck because the search warrant authorizing the search was inadequate.

## DISCUSSION

### I. Motion to Dismiss Second Indictment

Fed. R. Crim. P. 48(a) permits the government, with leave of the court, to dismiss an indictment. If such a dismissal is sought during trial, the defendant's consent is required. While "[l]eave of court is required pursuant to such a motion, . . . '[a] court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is clearly contrary to manifest public interest.'" United States v. Romero, 360 F.3d 1248, 1251 (10th Cir. 2004) (quoting United States v. Carrigan, 778 F.2d 1454, 1463 (10th Cir. 1985)). Furthermore, "to honor the purpose of the rule, the trial court at the very least

must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision." United States v. Derr, 726 F.2d 617, 619 (10th Cir. 1984). "We review the denial of a motion to dismiss the indictment for an abuse of discretion." United States v. Browning, 252 F.3d 1153, 1157 (10th Cir. 2001).[4]

Amaya's argument appears to focus on the second arrest for the second indictment, arguing that a second arrest for the same conduct is prosecutorial harassment and a violation of his due process rights, as well as his right to a speedy trial. We disagree.

The sequence of proceedings in this case does not reveal prosecutorial harassment or any violation of Amaya's constitutional rights. The district court's acquiescence in the dismissal of the first indictment was in accordance with Rule 48(a) and our case law. Reasons were given for the government's desire to dismiss the indictment, and the court evidently concluded that dismissal was not "'clearly contrary to manifest public interest.'" Romero, 360 F.3d at 1251 (quoting Carrigan, 778 F.2d at 1463). The second indictment was brought

_____

[4]Amaya argues that, because he claims the failure to dismiss the second indictment violated Amaya's constitutional rights to due process and a speedy trial, we must review the refusal to dismiss de novo. We will, of course, address his arguments and consider whether the failure to dismiss the indictment violated Amaya's constitutional rights. In doing so, we review questions of law de novo, as we routinely do. If we determine that the failure to dismiss the indictment violated Amaya's constitutional rights, we surely will conclude that the district court abused its discretion.

promptly, thereby minimizing any delay. These facts distinguish this case from Derr, upon which Amaya places great reliance.[5] Because there was no impropriety in the dismissal of the first indictment and the second indictment was brought promptly, we perceive no abuse of discretion in the district court's decision not to dismiss the second indictment. See United States v. Strayer, 846 F.2d 1262 (10th Cir. 1988).

Furthermore, Amaya suffered no constitutional deprivation as a result of the proceedings in this case. While he endeavors to craft an argument from several Supreme Court cases, they are all completely different from this case and afford him no relief. See Klopfer v. North Carolina, 386 U.S. 213, 214 (1967) (holding that "unusual" stated procedural device of "nolle prosequi with leave" which permitted prosecution to "indefinitely postpone prosecution on an indictment without stated justification over the objection of an accused" violates the Sixth Amendment right to a speedy trial); United States v. Marion, 404 U.S. 307, 313 (1971) (holding that, because the right to a speedy trial does not attach until a person is "accused," pre-indictment delay does not violate Sixth Amendment); Glover v. United States, 531 U.S. 198, 200 (2001) (holding that increase in prison time from six to twenty-one months constituted prejudice for

_____

[5]Derr, in which we approved the district court's dismissal of the second indictment as a remedy for the improper dismissal of the first indictment, has been "clearly limited to its particular facts and circumstances." United States v. Strayer, 846 F.2d 1262, 1266 (10th Cir. 1988).

purposes of establishing ineffective assistance of counsel); United States v. Lovasco, 431 U.S. 783, 796 (1977) (holding that prosecution following good-faith investigative delay does not violate due process).

## II. Motion to Suppress

"On appeal from the denial of a motion to suppress evidence, we review the district court's factual findings for clear error, viewing the evidence in the light most favorable to the government." United States v. Cantu, 405 F.3d 1173, 1176 (10th Cir. 2005). We review de novo the "district court's determination of reasonableness under the Fourth Amendment." Id.

Amaya argues the search warrant in this case did not provide probable cause to connect methamphetamine to the vehicle driven by him. "[P]robable cause exists where attending circumstances 'would lead a prudent person to believe there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (quoting United States v. Basham, 268 F.3d 1199, 1203 (10th Cir. 2001)). In assessing whether there is probable cause for a warrant, "we assess the sufficiency of a supporting affidavit based on the totality of the circumstances." Id. Further, a magistrate's determination that a warrant is supported by probable cause is entitled to "great deference." Id. On review, our task is to "ensur[e] 'that the magistrate had a substantial basis for concluding that

probable cause existed.'" United States v. Tisdale, 248 F.3d 964, 970 (10th Cir. 2001) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)).

The affidavit in this case provided sufficient information to permit the magistrate to conclude probable cause existed. As the description of the contents of the affidavit, set forth above, indicates, it described activity consistent with the delivery of narcotics, including by way of a truck. That established a "fair probability" that drugs would be found in the truck parked at 7018 LaVanne.

Furthermore, while Amaya argues the affidavit did not sufficiently establish the "veracity and basis of knowledge" for the confidential sources, Appellant's Br. at 15, we conclude it did. The affidavit included the statement that both sources had "provided reliable information in the past that has been corroborated through other means." Application and Aff. for Search Warrant, Attach. C, R. Vol. I, tab 39. Furthermore, Becerra's actions corroborated the confidential informants' information. See United States v. Danhauer, 229 F.3d 1002, 1006 (10th Cir. 2000) ("When there is sufficient independent corroboration of an informant's information, there is no need to establish the veracity of the informant."). In short, there was a substantial basis for the magistrate judge to conclude that probable cause existed.

Even were we to conclude that probable cause was lacking, we could still affirm the denial of Amaya's motion to suppress on the basis of the good-faith exception applicable to search warrants under United States v. Leon, 468 U.S.

897, 920-24 (1984).  Under that exception, "the evidence seized . . . need not be suppressed if the executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate."  Danhauer, 229 F.3d at 1006.  The Supreme Court has recognized "four situations in which an officer would not have reasonable grounds for believing a warrant was properly issued."  Id. at 1007 (citing Leon, 468 U.S. at 922-23):

> First, evidence should be suppressed if the issuing magistrate was misled by an affidavit containing false information or information that the affiant would have known was false if not for his "reckless disregard of the truth."  Second, the exception does not apply when "the issuing magistrate wholly abandon[s her] judicial role."  Third, the good-faith exception does not apply when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  Fourth, the exception does not apply when a warrant is so facially deficient that the executing officer could not reasonably believe it was valid.

Id. at 1007 (quoting Leon, 468 U.S. at 923).  None of those situations is present here.  Accordingly, were the warrant not supported by probable cause, the good-faith exception would bar suppression of the evidence seized from Amaya's truck.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the conviction.

ENTERED FOR THE COURT

Stephen H. Anderson
Circuit Judge

-11-