**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 23, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 05-8093

RON ALONZO BANKS,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT COURT OF WYOMING**
**(D. Ct. No. 04-CR-108-B)**

Submitted on the briefs:[*]

Michael H. Reese, Michael Henry Reece, P.C., Cheyenne, Wyoming, for the Appellant.

Matthew H. Mead, United States Attorney, and James C. Anderson, Assistant United States Attorney, Office of the United States Attorney for the District of Wyoming, Cheyenne, Wyoming, for the Appellee.

Before **TACHA**, Chief Circuit Judge, **BARRETT**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.

---

[*]After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

**TACHA**, Chief Circuit Judge.

---

Following a jury trial, Defendant-Appellant Ron Alonzo Banks was convicted in the District Court of Wyoming of conspiracy to distribute more than fifty grams of cocaine base in violation of 21 U.S.C. § 846; aiding and abetting the distribution of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; aiding and abetting the possession of cocaine base in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1); and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).  Mr. Banks appeals his conviction for carrying a firearm during and in relation to a drug trafficking crime, as well as the District Court's denial of two motions to suppress.  We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

## I. BACKGROUND

On March 22, 2004, Special Agent Don Farmer with the Wyoming Attorney General's Office Division of Criminal Investigation ("DCI"), other DCI agents, detectives from the Cheyenne Police Department, and agents with the United States Air Force Office of Special Investigation ("OSI") met with Judy Alford, an admitted crack cocaine addict, who offered to provide information regarding crack cocaine distribution in the Cheyenne, Wyoming area.  During the meeting, Ms. Alford informed officers that throughout the previous year she had purchased crack cocaine from four different individuals at an apartment near downtown Cheyenne.  The individuals were later

determined to be Mr. Banks, his girlfriend Kizzy Robinson, Ms. Robinson's brother Paul Robinson, and Ainsley Hart. The apartment was leased in Ms. Robinson's name.

The next day, Ms. Alford, who was equipped with a wireless transmitter and pre-recorded funds, made two separate controlled purchases of crack cocaine from Mr. Hart and Mr. Robinson at the apartment. Based on these purchases, as well Ms. Alford's statements to investigators that she had seen weapons in the apartment and had frequently witnessed Mr. Banks carrying a gun while dealing crack cocaine, state agents applied for and were granted a "no-knock" search warrant for the apartment. Because Mr. Banks was a member of the Air Force and maintained a residence at F.E. Warren Air Force Base at the time, OSI agents also obtained a military "authority to search" Mr. Banks's base home from Colonel Craig C. Whitehead. The authority to search, which is governed by the Military Rules of Evidence, extended to items that could be used for the use, possession, or distribution of controlled substances.

On March 25, 2004, Ms. Alford placed several calls to Mr. Banks in an attempt to make a controlled purchase of crack cocaine directly from him. Mr. Banks directed Ms. Alford to the apartment to retrieve the drugs. Officers who were conducting surveillance at the apartment, however, witnessed Mr. Banks leave before Ms. Alford arrived. Ms. Alford ultimately purchased the drugs from Mr. Hart.

Shortly after this third controlled buy, investigators simultaneously executed the search warrant for Ms. Robinson's apartment and the authorization to search Mr. Banks' home at F.E. Warren Air Force Base. At the apartment, agents found and seized a loaded

9mm Lorcin semiautomatic pistol underneath a couch cushion on which Mr. Hart was resting, forty dollars of pre-recorded money, five rocks of crack cocaine, a scale, and a surveillance system consisting of a camera hidden in a plant by the front door. DCI officials then contacted agents with the OSI, who had not yet completed the search of Mr. Banks' home. Upon learning of the seized items, OSI Agent Gunnar Hancock stopped the search and contacted Colonel Whitehead by telephone to expand the authorization to search. Colonel Whitehead orally granted the expansion and authorized officers to search for documents connecting Mr. Banks to the apartment, documents connecting Mr. Banks to Ms. Robinson, cellular phones, and firearms. Ultimately, nine-millimeter ammunition, thirty-three rocks of crack cocaine totaling 10.7 grams, and $3,296—including $100 in pre-recorded money—was uncovered from Mr. Banks' residence. At the conclusion of the search, Mr. Banks was arrested and given *Miranda* warnings. Agent Hancock completed and submitted a retroactive written affidavit of probable cause to Colonel Whitehead the following day. On May 19, 2004, Mr. Banks, Ms. Robinson, Mr. Robinson, and Mr. Hart, were indicted for conspiracy to distribute crack cocaine as well as a number of other controlled substance violations. In addition to those charges, Mr. Banks was also charged with carrying a gun during and in relation to a drug trafficking crime—namely, the crack conspiracy—in violation of 18 U.S.C. § 924(c)(1)(A)(i). Ms. Robinson, Mr. Robinson, and Mr. Hart pleaded guilty to conspiracy and agreed to testify, along with Ms. Alford, at Mr. Banks' trial.

Prior to trial, Mr. Banks filed a motion to suppress evidence seized from his home

on the ground that the authority to search was invalid. He also moved to suppress statements he made to investigating officers during the questioning that took place after his arrest, arguing that he was coerced into making them. The District Court denied Mr. Banks' motions, concluding that the authorization to search was issued in accordance with Military Rule of Evidence 315 and finding that he voluntarily submitted statements to officers.

At trial, Ms. Robinson, Mr. Robinson, Mr. Hart, and Ms. Alford testified that Mr. Banks sold crack cocaine regularly. Mr. Hart and Mr. Robinson also testified that they sold crack cocaine at the behest of Mr. Banks. Ms. Alford further testified that she recognized the Lorcin 9mm as the pistol that Mr. Banks had shown her in the past when she had purchased crack cocaine from him. Ms. Robinson, Mr. Robinson, and Mr. Hart all corroborated Ms. Alford's testimony regarding the firearm by stating that they had seen Mr. Banks carry the Lorcin 9mm pistol regularly when making drug deals. Taking the stand in his own defense, Mr. Banks conceded that the pistol was his, but maintained that he left it at the apartment prior to the beginning of the conspiracy and never touched it again. He was convicted on all counts and sentenced to 211 months' imprisonment.

Mr. Banks raises three issues on appeal. First, he contends that there was insufficient evidence that he carried a firearm during or in relation to the drug conspiracy. Second, he asserts that the District Court erred in denying his motion to suppress evidence gathered at his base home. Finally, he argues that the District Court erred in denying his motion to suppress statements he made after his arrest.

## II.  DISCUSSION

A.    Sufficient Evidence Supports Mr. Banks' Conviction for Carrying a Firearm

During and In Relation to a Drug Trafficking Crime

We review claims of insufficient evidence de novo.  *United States v. LaVallee*, 439 F.3d 670, 697 (10th Cir. 2006).  "'[W]e ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt.'" *United States v. Radcliff*, 331 F.3d 1153, 1157 (10th Cir. 2003) (quotations omitted).  We do not assess the credibility of witnesses or weigh conflicting evidence because these tasks are exclusively those of the jury. *United States v. Castorena-Jaime*, 285 F.3d 916, 933 (10th Cir. 2002).  Accordingly, we may reverse "only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Wacker*, 72 F.3d 1453, 1462–63 (10th Cir. 1995).

Under 18 U.S.C. § 924(c)(1)(A)(i), "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" is subject to a mandatory five-year term of imprisonment.  Mr. Banks was convicted under the first prong of the statute, which requires the Government to prove three elements beyond a reasonable doubt: (1) Mr. Banks committed a drug trafficking offense (in this case, the conspiracy to distribute crack cocaine); (2) Mr. Banks knowingly carried a firearm; and (3) Mr. Banks carried a

-6-

firearm during and in relation to the conspiracy to distribute crack cocaine. *See United States v. McKissick*, 204 F.3d 1282, 1292 (10th Cir. 2000). Mr. Banks concedes that he was involved in the drug conspiracy, but he argues that insufficient evidence demonstrates that he carried the Lorcin pistol during and in relation to that conspiracy.

In order to satisfy the "carry" element, the Government must show Mr. Banks possessed the weapon "through the exercise of dominion and control." *United States v. Lampley*, 127 F.3d 1231, 1240 (10th Cir. 1997). Further, we have determined that "[a] firearm is carried 'during and in relation to' the underlying crime when the 'defendant avail[s] himself of the weapon and . . . the weapon play[s] an integral role in the [underlying offense].'" *United States v. Brown*, 400 F.3d 1242, 1249 (10th Cir. 2005) (quoting *Lampley*, 127 F.3d at 1240). This standard "requires the government to prove a direct nexus between the defendant's carrying of a firearm and the underlying drug crime." *Brown*, 400 F.3d at 1249. For this nexus to be established, evidence must demonstrate that the defendant intended the firearm to be available for use in the offense. *United States v. Shuler*, 181 F.3d 1188, 1190 (10th Cir. 1999). For example, we have concluded that carrying a gun to deter interference with a drug trafficking crime is done during and in relation to the crime. *See Brown*, 400 F.3d at 1251; *United States v. Lott*, 310 F.3d 1231, 1248 (10th Cir. 2002).

In this case, Mr. Banks argues that the Government failed to show that he actively employed the firearm, and that there was no connection between the firearm and his actions as a crack cocaine dealer. He also contends that he was living miles away from

-7-

where the gun was recovered. Relatedly, he intimates that because the gun was found under a pillow, on a couch where Mr. Hart slept, and in the apartment where Mr. Hart and Mr. Robinson resided and sold drugs, the gun was an instrument of their drug trafficking activities and not his own.

Mr. Banks' arguments are unpersuasive. To begin, Mr. Banks was not charged with the "possession" prong of § 924(c). Therefore, any argument that he did not have access to the weapon in question at the time it was seized by law enforcement officials is irrelevant. Moreover, several witnesses testified to seeing Mr. Banks carry the Lorcin while making crack cocaine transactions throughout the duration of the conspiracy. First, Ms. Alford testified that she had seen the weapon in the apartment, and that Mr. Banks had let her examine it while he was there. Ms. Robinson testified that Mr. Banks kept the weapon at her apartment and would retrieve it when customers would come over to purchase crack cocaine. Mr. Hart testified that he witnessed Mr. Banks carrying the gun in his waistband "pretty much every time I see him," and claimed that Mr. Banks did so for protection while making crack cocaine transactions. Finally, Mr. Robinson confirmed Mr. Hart's testimony by swearing that he often witnessed Mr. Banks carrying the pistol, and that Mr. Banks would sometimes place the gun on the counter during a drug transaction, because as Mr. Robinson believed, Mr. Banks wanted to display that he had protection.

Based on the overwhelming evidence produced by the Government, a jury could readily conclude that Mr. Banks kept the 9mm Lorcin pistol accessible while conducting

drug transactions for the purpose of deterring interference with his operations. Therefore, the evidence was sufficient to convict Mr. Banks of carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i).

B.     The District Court Did Not Err in Denying Mr. Banks' Motion to Suppress Evidence

Mr. Banks next argues that the expanded authority to search his home on the military base was invalid, and that all evidence seized in connection with that authority to search should have been suppressed. When reviewing the denial of a motion to suppress, this court examines the totality of circumstances and reviews the evidence in the light most favorable to the government. *United States v. Gay*, 240 F.3d 1222, 1225 (10th Cir. 2001). Furthermore, we accept the district court's factual findings unless they are clearly erroneous. *Id.* We review de novo a district court's determination that a search or seizure is in accordance with the law. *Id.* at 1226.

Under Military Rule of Evidence 315, "[a]n 'authorization to search' is an express permission, written or oral, issued by a competent military authority to search a person or an area for specified property or evidence or for a specific person and to seize such property evidence or person." An authority to search must be supported by probable cause, which can be determined on the basis of "[o]ral statements communicated to the authorizing official in person, via telephone, or by other appropriate means of communication." M.R.E. Rule 315(f)(2)(B). Mr. Banks argues that Agent Hancock was not under oath when he spoke over the phone with Colonel Whitehead regarding the

-9-

expansion of the authority to search, and this infirmity renders the resulting expanding authority to search invalid.[1]

While Mr. Banks did file a motion to suppress this evidence, he never argued that Agent Hancock's oral statements to Colonel Whitehead were not sworn. In fact, there is no mention of this issue in the record, and, accordingly, it is not clear if Agent Hancock actually had been under oath when he was speaking with Colonel Whitehead. Accordingly, even if we were to assume that Rule 315 requires probable cause statements to be made under oath, Mr. Banks has failed to point to anything in the record to support the contention that Agent Hancock was not. Moreover, a party's failure to raise a specific argument in a suppression hearing results in waiver on appeal unless the party is able to show cause why it failed to raise the argument below. *See United States v. Dewitt*, 946 F.2d 1497, 1502 (10th Cir. 1991). Finding no such cause here, we do not consider this argument further.

Mr. Banks also appears to argue that it was impermissible for OSI agents to ask for the expansion of the authority to search his home after they were told of the items seized in connection with the search of Ms. Robinson's apartment. We need not tarry long on this contention. Mr. Banks provides no legal authority to support this argument; therefore, we decline to address it. *See Phillips v. Calhoun*, 956 F.2d 949, 953–54 (10th

---

[1]To the extent Mr. Banks argues that oral statements of probable cause are unconstitutional, we have previously held "that under military rules oral affidavits and oral authorization of search warrants without contemporaneous writings are free from constitutional infirmity." *United States v. Brown*, 784 F.2d 1033, 1037 (10th Cir. 1996).

Cir. 1992) (refusing to consider a position unsupported by legal argument or authority).

C.      The District Court Did Not Err in Denying Mr. Banks' Motion to Suppress His
        Statements

Finally, Mr. Banks argues that inculpatory statements made after his arrest were made involuntarily as a result of coercion. When reviewing the denial of a motion to suppress a statement, we review the evidence in the light most favorable to the government and accept the district court's factual findings unless they are clearly erroneous. *United States v. Toles*, 297 F.3d 959 (10th Cir. 2002). We review de novo the ultimate issue of the voluntariness of a statement, taking into account the totality of the circumstances surrounding the confession. *See United States v. Nguyen*, 155 F.3d 1219, 1222 (10th Cir. 1998).

Mr. Banks first contends that interrogating officers threatened to take his child away from him if he did not cooperate. The District Court, however, found as a matter of fact that no such threat occurred. Because this finding is not clearly erroneous, we do not find merit to Mr. Banks' first contention.

Mr. Banks also argues for the first time on appeal that he understood a statement made to him at his bond hearing to be a military order to cooperate with law enforcement. As noted above, however, specific arguments must be made in a suppression hearing or they will generally not be considered on appeal. *See Dewitt*, 946 F.2d at 1502. Finding no exceptional circumstances in this case, we decline to address this issue.

### III. CONCLUSION

The Government presented sufficient evidence to convict Mr. Banks of violating

18 U.S.C. §924(c)(1), and the District Court did not err in denying Mr. Banks' two

motions to suppress evidence and his own statements.  We therefore AFFIRM.