**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff - Appellee.

v.

OSCAR CALVIN, III,

      Defendant - Appellant.

No. 13-3040
(D.C. No. 2:12-CR-20006-KHV-1)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

---

Oscar Calvin, III pled guilty to being a felon in possession of a firearm. He did so under a conditional plea agreement permitting him to appeal from the denial of his pretrial motions to suppress evidence and to dismiss the charges for alleged violations of the Speedy Trial Act. We affirm.

---

[*] The parties have waived oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). This case is submitted for decision on the briefs.

This order and judgment is an unpublished decision, not binding precedent. 10th Cir. R. 32.1(A). Citation to unpublished decisions is not prohibited. Fed. R. App. P. 32.1. It is appropriate as it relates to law of the case, issue preclusion and claim preclusion. Unpublished decisions may also be cited for their persuasive value. 10th Cir. R. 32.1(A). Citation to an order and judgment must be accompanied by an appropriate parenthetical notation – (unpublished). *Id.*

# FACTUAL BACKGROUND

The order denying Calvin's first motion to suppress evidence provides the necessary background:

> The parties have stipulated to the following facts. On January 10, 2012, Kansas City, Kansas Police Officer Eckel was patrolling in the area of 12th Street and Quindaro Boulevard. He stopped a 2001 Ford Taurus for violation of the municipal window tint ordinance. Officer Eckel determined that the driver, defendant Oscar Calvin, III, had a suspended driver's license and no insurance, and arrested him.
>
> When Officer Eckel made the traffic stop, defendant illegally parked his vehicle more than 12 inches from the curb. After he arrested defendant, Officer Eckel determined that the vehicle was a traffic hazard and ordered that it be towed. Pursuant to Kansas City, Kansas Police Department policy, Officer Eckel then conducted an inventory of the vehicle. When he opened the glove compartment he discovered a .45 caliber EAA pistol, serial number EA117419. The firearm was loaded with one round in the chamber and nine rounds in the magazine. In 2004, defendant was convicted of Attempted Second Degree Murder in Wyandotte County case number 03CR1647. As a convicted felon, defendant is prohibited from possessing a firearm.
>
> On January 12, 2012, Detective Sutton went to the Wyandotte County Jail to speak with defendant. Detective Sutton advised defendant of his <u>Miranda</u> rights and told him that Officer Eckel had recovered a gun from defendant's car. Detective Sutton suggested that defendant had carried the gun for protection, and defendant responded, "You're already right, I had it for protection." Defendant then stated that he did not want to give a statement about the case. Just before leaving the room, Detective Sutton turned to defendant and asked if he would give a DNA sample to be compared with DNA on the firearm. Defendant responded, "I've handled that gun, my DNA will be on it."

(Vol. I at 41-42.)

# PROCEDURAL BACKGROUND

Calvin, through counsel, filed a motion to suppress all evidence based on the allegedly illegal search of his car. However, at the hearing, Calvin conceded his vehicle was illegally parked and Officer Eckel was authorized to order its impoundment. Because the Kansas City Police Department had a written procedure for an inventory search of impounded vehicles that included a search of an unlocked glove compartment, the motion was denied.

Calvin filed a series of pro se motions asking for reconsideration, alleging pre-indictment delay, claiming a violation of his *Miranda* rights, and other issues not relevant to this appeal. These motions were summarily denied because he was represented by counsel. On September 11, 2012, the trial judge granted his motion to proceed pro se. Calvin again filed his motions, which the judge considered after taking testimony and permitting argument. The only factual issues concerned Detective Sutton's interview with Calvin at the Wyandotte County jail. The court's order elaborates on the issue:

> Detective Sutton's testimony regarding that encounter differs sharply from defendant's testimony.
>
> Detective Sutton testified as follows. Detective Sutton read defendant his rights under <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966), and had defendant initial each line as he read them. Detective Sutton asked if defendant wanted to talk about what had happened, and defendant said he wanted to know what the officers had said. Detective Sutton told defendant that Officer Eckel had recovered a gun from defendant's car. Detective Sutton suggested that defendant carried the gun for protection, and defendant responded, "You're already right, I had it for protection." Defendant then said that he did not want to make a taped statement, "which is telling me that he wants to remain silent this is per <u>Miranda</u> rights a right of his and so we conclude the interview." Just before leaving the room, however, Detective Sutton asked defendant if he would give a DNA sample to be

- 3 -

compared with DNA on the firearm, and defendant responded, "I've handled that gun, my DNA will be on it." At the hearing, the government attorney attempted to clarify Detective Sutton's testimony, asking "And then when you asked him if he was going – if he would give you a DNA sample, that's when he made the voluntary statement that his DNA would be on the gun?" Detective Sutton replied,"Correct."

In contrast, defendant testified as follows. Detective Sutton asked if he knew his *Miranda* rights. Defendant started to state his <u>Miranda</u> rights, but Detective Sutton stopped him, gave him a piece of paper and said "initial." Detective Sutton did not read the <u>Miranda</u> rights set out on the document which he told defendant to initial. Detective Sutton asked defendant why he had a gun and defendant responded that he never had a gun. Detective Sutton then asked defendant if he wanted to make a taped statement, and defendant responded "not without a lawyer present." On cross-examination, defendant acknowledged that he had initialed each line of the <u>Miranda</u> warning, but said that he did not read the document. The Court then said to defendant "I guess what you're saying is, you knew your rights but you're complaining because he didn't read them to you." Defendant responded that he knew some of his rights but stated that "I never read all the way through my rights and [Detective Sutton] never read me my rights except for I had a right to remain silent, anything I say can and will be used against me in a court of law. That's as far as I got. After that, the rest I don't know." The Court asked defendant if there were other <u>Miranda</u> rights that have any bearing on this, and defendant read the entire list of rights from the document.

To the extent that the testimony of Detective Sutton and defendant are inconsistent, the Court finds that Detective Sutton's testimony is more credible.

(Vol. 1 at 171-73) (footnote omitted).

The judge denied Calvin's motion to suppress the gun found in the car by adhering to the analysis in the original Order disposing of this issue. She also denied the motion to suppress Calvin's first statement to Sutton ("You're already right, I had [the gun] for protection"), but granted suppression of Calvin's second statement ("I've handled that gun, my DNA will be on it"), because Sutton initiated the last conversation after Calvin

had asked for an attorney.  She also rejected Calvin's claim of a speedy trial violation and explained in detail why the trial was within the statutory time limitations.  *See* 18 U.S.C. § 3161.

Calvin proceeded to trial pro se with stand-by counsel.  He decided to change his plea after the government concluded its case.  The court took a recess and Calvin pled guilty on the condition he could appeal the determination of his pretrial motions.  Almost three months later, just prior to sentencing, Calvin filed a motion to withdraw his guilty plea.  He claimed he was coerced into making the plea and was not told he could not withdraw his plea even if his appeal was successful.[1]  The judge denied his motion.  Calvin was sentenced to 57 months in prison.

## DISCUSSION[2]

A.    Automobile Search

"The reasonableness of a search or seizure under the Fourth Amendment is a question of law reviewed de novo."  *United States v. Taylor*, 592 F.3d 1104, 1107 (10th Cir. 2010).  "We review the district court's factual findings including the credibility of the witnesses for clear error and the evidence in the light most favorable to the government."  *Id*. at 1108.

---

[1] The court explained to Calvin that if he won his appeal, the evidence could not be used against him and the government would have no case.  Calvin does not challenge the validity of his plea on appeal.

[2] We construe a pro se defendant's submissions liberally.  *Ledbetter v. City of Topeka, Kan.,* 318 F.3d 1183, 1187 (10th Cir. 2003).

An inventory search under appropriate circumstances is valid and constitutionally permissible. *See id.* at 1108 (an inventory search pursuant to a policy of searching towed cars to avoid liability for lost property is valid). "The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge." *South Dakota v. Opperman*, 428 U.S. 364, 369 (1976) (concluding it was reasonable to search an unlocked glove box during an inventory search). This search was conducted according to standard police procedures. *Id*. at 376. Contrary to Calvin's contentions, these procedures do not violate the Fourth Amendment by allowing the officers to look into an unlocked glove compartment. *Id*. at 376 n.10 ("[O]nce the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have had ready and unobstructed access once inside the car."). The conduct of the police was not "unreasonable" under the Fourth Amendment.

B.     *Miranda* Violation

When reviewing the denial of a motion to suppress a defendant's statements, we accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's ruling. *United States v. Banks*, 451 F.3d 721, 728 (10th Cir. 2006). "The credibility of witnesses, the weight accorded to evidence, and the reasonable inferences drawn therefrom fall within the province of the district court." *United States v. Jones*, 701 F.3d 1300,1308 (10th Cir. 2012) (quotations omitted).

According to Calvin, because he did not sign the *Miranda* waiver, but only initialed it, Sutton violated his right to remain silent by asking if Calvin wanted to talk. Moreover, Calvin says, Sutton's question created "circumstances pregnant with coercion." (Appellant's Br. at 14.) This argument is without merit.

An ambiguous or equivocal statement, or no statement, regarding the *Miranda* right to a lawyer does not require the police to stop the interrogation. *Berghuis v. Thompkins*, 560 U.S. 370, 130 S. Ct. 2250, 2259-60 (2010) (citation and quotations omitted). Neither do the police need to "clarify whether the accused wants to invoke his or her *Miranda* rights." *Id*. The same standard applies when an accused has invoked the *Miranda* right to remain silent. *Id*. at 2260. Calvin's coercion allegation has no basis. He "does not claim that police threatened or injured him during the interrogation or that he was in any way fearful." *Id*. at 2263. His first statement was properly admitted at trial.

## C.     Speedy Trial

The Federal Criminal Code, 18 U.S.C. § 3161(c)(1), requires the prosecution to bring a defendant who pleads not guilty to trial within 70 days from "the filing date . . . of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." Under § 3161(h), certain periods of time are excluded from the calculation. Subsection (h)(1)(D) excludes any "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion."

At his hearing, Calvin contended several delays ought not be excluded from the running of the speedy trial clock: (1) the delay due to his first pretrial motion, filed by his attorney, (2) the hearing on the motion, and (3) the period until the dispositive order was issued. The reason, he says, is because the judge did not make written findings that part of the delay served the "ends of justice." *See* 18 U.S.C. § 3161(h)(7)(A) (any delay resulting from a continuance determined to serve the ends of justice must include the judge's written finding that the ends of justice outweigh the interest in a speedy trial). He also stated he did not give his attorney permission to file the motion on the date it was filed. The court patiently and repeatedly explained to Calvin that his attorney did not need his permission to file a motion to suppress evidence and that an "interest of justice" reason was not required to exclude the time. On appeal, Calvin rearranges his argument to encompass different dates, but the essence is the same. So is the result. The time devoted to his pretrial motions was automatically excluded from the time they were filed until the time they were promptly decided. See 18 U.S.C. § 3161(h)(1)(H) (stating motions will be decided within 30 days after taking the motion under consideration).

AFFIRMED.

**Entered by the Court:**

**Terrence L. O'Brien**
United States Circuit Judge

- 8 -