**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 11, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSEPH ANTHONY RANSOM,

Defendant - Appellant.

No. 15-3293
(D.C. No. 6:14-CR-10194-EFM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **McKAY**, and **BALDOCK**, Circuit Judges.

Defendant Joseph Ransom was convicted by a jury of manufacturing more than 100 marijuana plants, possessing marijuana with intent to distribute, possessing firearms in furtherance of a drug-trafficking crime, and possessing a firearm as a felon. He was sentenced to a total of 120 months of imprisonment on these charges, plus a thirty-day consecutive sentence for contempt of court. He raises two issues on appeal: a challenge to the sufficiency of the evidence supporting his conviction for possession of firearms in furtherance of a drug-

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.
    This case was ordered submitted on the briefs on January 18, 2017.

trafficking crime, and an argument that his statutory right to a speedy trial was violated.

We first consider Defendant's challenge to the sufficiency of the evidence on the count of possessing a firearm in furtherance of a drug-trafficking crime. Defendant contends the government did not sufficiently prove a connection between the firearms found in his living room and the marijuana grow operation he was conducting in his basement. He argues the presence of the firearms in the same house as the marijuana is not sufficient for the jury to conclude that the firearms were possessed in furtherance of his drug-trafficking operation, particularly in light of the fact that one of the government's main witnesses—Defendant's girlfriend and co-defendant, who pled guilty before trial and then testified against Defendant—testified that Defendant did not sell drugs from their house and did not take the firearms outside of the house. Defendant argues her testimony "overcomes the inferences from the circumstantial evidence permitted by the case law and the [jury] instruction." (Opening Br. at 13.)

"In challenging his conviction on sufficiency-of-the-evidence grounds, [Defendant] is faced with a high hurdle: in reviewing the sufficiency of the evidence to support a jury verdict, this court must review the record de novo and ask only whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a

-2-

reasonable doubt." *United States v. Hanzlicek*, 187 F.3d 1228, 1239 (10th Cir. 1999) (internal quotation marks omitted). In conducting this review, "[w]e do not assess the credibility of witnesses or weigh conflicting evidence because these tasks are exclusively those of the jury," and we accordingly "may reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Banks*, 451 F.3d 721, 725–26 (10th Cir. 2006) (internal quotation marks omitted).

We conclude that a reasonable jury could find Defendant guilty beyond a reasonable doubt based on the evidence presented by the government in this case. A defendant's "intent to possess [a] weapon to further [a] drug trafficking crime is generally proven through circumstantial evidence," *United States v. King*, 632 F.3d 646, 655 (10th Cir. 2011), and such circumstantial evidence may include "the type of drug activity conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm was found," *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001). Here, the jury was presented with evidence that Defendant was engaged in a significant drug-trafficking operation, growing approximately two hundred marijuana plants in his basement and earning enough money from his marijuana sales that he and his girlfriend quit their jobs and supported themselves entirely with drug proceeds. The jury heard that two loaded firearms were found

in the living room of Defendant's small house in immediately accessible locations, one propped up against the wall near the front door, and the other leaning against the wall approximately ten or fifteen feet away, apparently near the front window. The jury heard evidence that Defendant had illegally circumvented federal gun laws to obtain the firearms, having his girlfriend fill out the paperwork to buy the guns for him because his prior felony conviction prevented him from buying (or possessing) them himself. These firearms were both powerful semi-automatic guns loaded with more than fifty rounds of ammunition, and there was a round in the chamber of each firearm, making them ready to fire almost immediately. Although the grow operation was downstairs in the basement, the jury heard testimony that it is typical for marijuana growers to keep their weapons in the living area where they spend most of their time, not in the same location as the growing plants. Moreover, based on the digital scales and packaged marijuana found near the firearms in the living room of Defendant's home, the jury could reasonably infer that Defendant weighed and packaged the marijuana for distribution in this room. Based on all of this circumstantial evidence, a rational juror could find beyond a reasonable doubt that Defendant illegally obtained powerful semi-automatic firearms and then kept them, fully loaded, in a location where he could immediately access them if he needed to protect his livelihood—his drug-manufacturing and -trafficking operation.

Contrary to Defendant's arguments, his co-defendant's testimony does not

change this analysis. First, we are not convinced her testimony, if credited, would necessarily rebut the inference that the firearms were possessed in furtherance of the drug-trafficking crime, even if, as Defendant argues, the firearms remained in Defendant's house while Defendant sold the drugs at his buyers' homes. Second, and more importantly, the jury was simply not required to credit all of the co-defendant's testimony, and we will not second-guess the jury's verdict based on evidence the jury was free to disbelieve at trial. Contrary to the implicit assumption behind Defendant's appellate arguments, the jury was not required to either accept or reject his co-defendant's testimony wholesale. Rather, the jury was free to accept the most incriminating parts of her testimony while rejecting all of her testimony that might have been helpful for Defendant. Taking the evidence in the light most favorable to the government, as we must in reviewing the sufficiency of the evidence to support a jury finding of guilt, we are persuaded that the jury was presented with sufficient evidence to conclude that Defendant possessed his firearms in furtherance of his drug-trafficking operation. We accordingly affirm Defendant's conviction on this charge.

We turn then to Defendant's argument that his statutory speedy trial rights were violated. In his opening brief, Defendant argued that eighty days of non-excludable time elapsed before trial started, ten days more than the seventy-day limit set by statute. *See* 18 U.S.C. § 3161(c)(1). This calculation was based on Defendant's argument that the speedy trial clock began to run on December 9,

-5-

2014, when Defendant was indicted. (*See* Opening Br. at 16.) In his reply brief, however, Defendant concedes the speedy trial clock did not begin to run until December 19, 2014, when his co-defendant made her first appearance. *See* 18 U.S.C. § 3161(h)(6); *Henderson v. United States*, 476 U.S. 321, 323 n.2 (1986) ("All defendants who are joined for trial generally fall within the speedy trial computation of the latest codefendant."). Given that Defendant's initial calculation of eighty days was thus off by ten days, it thus appears that no speedy trial act violation occurred, even under Defendant's calculation of the time. Moreover, we further note that Defendant's calculation fails to account for nine additional days during which his co-defendant's motion to sever was pending. Defendant argues that this time should not be excluded from the speedy trial calculation because the motion "was never considered and it never affected the course of the proceedings," (Reply Br. at 8–9), since his co-defendant withdrew her motion to sever when she entered into a plea agreement soon thereafter. However, the speedy trial clock stops running "automatically upon the filing of a pretrial motion irrespective of whether the motion has any impact on when the trial begins." *United States v. Tinklenberg*, 563 U.S. 647, 653 (2011). This is true even when a co-defendant files and subsequently withdraws the pretrial motion without any ruling from the court. *See United States v. Young*, 45 F.3d 1405, 1411–12 (10th Cir. 1995) (holding, where a co-defendant's pretrial motion to suppress evidence remained pending for six months before it was withdrawn

pursuant to a guilty plea, that the entire six-month period was excludable as to the defendant).  Thus, the speedy trial clock was tolled for nine days while the motion to sever was pending, and there is no doubt that Defendant's trial occurred well within the seventy-day limit set by statute.

We accordingly **AFFIRM** Defendant's conviction and sentence.  Defense counsel's motion to withdraw as appointed counsel for Defendant is **GRANTED**.

Entered for the Court


Monroe G. McKay
Circuit Judge